**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| JACOB WOLFE<br>108 Stihl Avenue<br>Circleville, Ohio 43113, | ) ) ) ) | CASE NO.: |
| | ) | JUDGE: |
| Plaintiff, | ) ) | |
| | ) | |
| v. | ) ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND INJUNCTIVE RELIEF** |
| OHIOHEALTH CORPORATION<br>600 North Pickaway Street<br>Circleville, Ohio 43113, | ) ) ) | **JURY DEMAND ENDORSED**<br>**HEREIN** |
| | ) | |
| **Serve also:** | ) | |
| OHIOHEALTH CORPORATION | ) | |
| c/o Terri W. Meldrum, Esq. | ) | |
| Registered Agent | ) | |
| 3430 OhioHealth Parkway, | ) | |
| Columbus, Ohio 43202, | ) | |
| | ) | |
| and, | ) | |
| | ) | |
| KEISHA HINTZ | ) | |
| c/o Ohio Health Corporation | ) | |
| 600 North Pickaway Street | ) | |
| Circleville, Ohio 43113 | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Jacob Wolfe, by and through undersigned counsel, as her Complaint against Defendants OhioHealth Corporation ("OHC") and Keisha Hintz ("Hintz"), states and avers the following:

**PARTIES, JURISDICTION, AND VENUE**

1. Wolfe is a resident of the city of Circleville, Pickaway County, Ohio.

2. At all times herein, Wolfe was acting in the course and scope of her employment.

3.   OHC is a domestic corporation that does business at 600 North Pickaway Street, Circleville, Ohio 43113.

4.   OHC is and, at all times herein, was an employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

5.   Hintz is a resident of the State of Ohio.

6.   At all times herein, Hintz was acting in the course and scope of her employment.

7.   Hintz is, and at all times hereinafter mentioned, was an individual who was a manager and/or a supervisor at OHC and who acted directly or indirectly in the interest of OHC in relation to its employees.

8.   This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Wolfe is alleging a Federal Law Claim under the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII").

9.   All material events alleged in this Complaint occurred in Pickaway County, Ohio.

10.  This court has supplemental jurisdiction over Wolfe's state law claims pursuant to 28 U.S.C. § 1367 as Wolfe's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

11.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

12.  On or about June 25, 2024, Wolfe filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 523-2024-03620, against OHC ("Wolfe EEOC Charge").

13.  Wolfe dually filed the Wolfe EEOC Charge with the EEOC and the Ohio Civil Rights Commission ("OCRC").

14. On or about February 6, 2025, the EEOC issued a Notice of Right to Sue letter to Wolfe regarding the Charges of Discrimination brought in the Wolfe EEOC Charge.

15. Wolfe received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto Plaintiff's Exhibit A.

16. On or about June 25, 2024, Wolfe filed a Charge of Discrimination with the OCRC, Charge No. CLEE1(007865)06252024, against Hintz ("Wolfe OCRC Charge").

17. On or about October 3, 2024, the OCRC issued a Notice of Right to Sue letter to Wolfe regarding the Charges of Discrimination brought in the Wolfe OCRC Charge.

18. Wolfe received her Right to Sue letter from the OCRC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto Plaintiff's Exhibit B.

19. Wolfe has filed this Complaint within 90 days of the issuance of the EEOC Notice of Right to Sue letter.

20. Wolfe has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

21. Wolfe is a former employee of OHC.

22. Wolfe began working for OHC on or about May 22, 2023.

23. Wolfe worked for OHC as an EVS Attendant.

24. At all times herein, Wolfe was qualified for the position of EVS Attendant

25. Wolfe was assigned male at birth.

26. Wolfe identifies as a woman.

27. Wolfe disclosed to coworkers that she is transgender.

28. Wolfe's identity as a transgender individual is apparent from the way Wolfe dresses and her appearance in general.

29. Wolfe disclosed to coworkers that she is homosexual.

30. Because of Wolfe's sexual identity, she is a member of ap protected class under Title VII.

31. Because of Wolfe's sexual orientation, she is a member of a protected class under Title VII.

32. In or around July of 2023, Wolfe's coworker, Nikkita Cline, informed Wolfe that another employee, James Perkins ("Perkins"), was threatening to beat up Wolfe for being homosexual ("First Discriminatory Comment").

33. The First Discriminatory Comment was offensive to Wolfe.

34. The First Discriminatory Comment was severe.

35. In July of 2023, Wolfe reported the First Discriminatory Comment to Keisha Hintz ("Hintz") ("Report of Discrimination").

36. Hintz was Wolfe's supervisor.

37. At all times herein, OHC knew that Wolfe was assigned male at birth.

38. At all times herein, Hintz knew that Wolfe was assigned male at birth.

39. At all times herein, OHC knew that Wolfe identifies as a woman.

40. At all times herein, Hintz knew that Wolfe identifies as a woman.

41. Perkins made the First Discriminatory Comment because of Wolfe's sexual orientation.

42. Perkins made the First Discriminatory Comment because Wolfe did not conform to the sexual-identity-based stereotypes Perkins expected of Wolfe.

43. Defendants have a policy against discrimination ("Discrimination Policy").

44. Defendants' Discrimination Policy precludes retaliation against employees who complain about discrimination.

45. Alternatively, retaliation against employees who complain about discrimination is permitted by Defendants.

46. Defendants' Discrimination Policy precludes intimidation against employees who complain about discrimination.

47. Alternatively, intimidation against employees who complain about discrimination is permitted by Defendants.

48. Defendants' Discrimination Policy requires employees to report what they reasonably believe is a violation of the Discrimination Policy.

49. Defendants' Discrimination Policy precludes retaliation against employees who report a violation of the Discrimination Policy.

50. Alternatively, retaliation against employees who report a violation of the Discrimination Policy is permitted by Defendants.

51. Defendants' Discrimination Policy precludes intimidation against employees who report a violation of the Discrimination Policy.

52. Alternatively, intimidation against employees who report a violation of the Discrimination Policy is permitted by Defendants.

53. The First Discriminatory Comment violates the Discrimination Policy.

54. Defendants' have a policy to investigate reports of violations of the Discrimination Policy.

55. An investigation should include interviewing the complainant.

56. An investigation should include interviewing the subject of the complaint.

57. An investigation should include interviewing the subject of the reported discrimination.

58. An investigation should include interviewing witnesses to the reported discrimination.

59. An investigation should include getting a written statement from the complainant.

60. An investigation should include getting a written statement from the subject of the complaint.

61. An investigation should include getting a written statement from the subject of the reported discrimination.

62. In response to Wolfe's Report of Discrimination, Defendants did not interview witnesses.

63. In response to Wolfe's Report of Discrimination, Defendants did not get a written statement from Wolfe.

64. In response to Wolfe's Report of Discrimination, Defendants did not get a written statement from Perkins.

65. In response to Wolfe's Report of Discrimination, Defendants did not get a written statement from witnesses.

66. Defendants did not terminate Perkins for the First Discriminatory Comment he made against Wolfe.

67. Perkins was not terminated as a result of Wolfe's Report of Discrimination.

68. In July or August of 2023, Wolfe's coworker, Sierra Wasson ("Wasson"), asked Wolfe "Why do you want to have your penis cut off?" ("Second Discriminatory Comment").

69. Wasson made the Second Discriminatory Comment because Wolfe did not conform to the sexual identity-based stereotypes Wasson expected of Wolfe.

70. OHC was aware of the Second Discriminatory Comment being made against Wolfe.

71. Hintz was aware of the Second Discriminatory Comment being made against Wolfe.

72. Wolfe reported the Second Discriminatory Comment to Hintz ("Second Report of Discrimination").

73. OHC failed to take prompt remedial action in response to the Second Discriminatory Comment.

74. Hintz failed to take prompt remedial action in response to the Second Discriminatory Comment.

75. The Second Discriminatory Comment violates the Discrimination Policy.

76. In response to Wolfe's Second Report of Discrimination, Defendants did not interview witnesses.

77. In response to Wolfe's Second Report of Discrimination, Defendants get not get a written statement from Wolfe.

78. In response to Wolfe's Second Report of Discrimination, Defendants did not get a written statement from Wasson.

79. In response to Wolfe's Second Report of Discrimination, Defendants did not get a written statement from witnesses.

80. Defendants did not terminate Wasson for the Second Discriminatory Comment she made against Wolfe.

81. Wasson was not terminated as a result of Wolfe's Second Report of Discrimination.

82. In or around August 2023, Wolfe's coworkers made various additional discriminatory remarks.

83. In or around August 2023, Wolfe's coworkers asked her "Why aren't you happy how you are?" ("Third Discriminatory Comment").

84. Wolfe's coworkers made the Third Discriminatory Comment because Wolfe did not conform to the sexual-identity-based stereotypes Wolfe's coworkers expected of Wolfe.

85. In or about early February of 2024, Wolfe's coworker, Clay Ludwig ("Ludwig"), remarked to Wolfe "That is funny coming from a Trans Jew" ("Fourth Discriminatory Comment Tree").

86. Ludwig made the Fourth Discriminatory Comment because Wolfe did not conform to the sexual-identity-based stereotypes Ludwig expected of Wolfe.

87. Ludwig made the Fourth Discriminatory Comment because of Wolfe's religion.

88. Throughout 2024, Ludwig referred to Wolfe as "Trans Jew" and "Gay Jew" on numerous occasions. ("Fifth Discriminatory Comment" and "Sixth Discriminatory Comment").

89. Ludwig made the Fifth Discriminatory Comment and Sixth Discriminatory Comment because Wolfe did not conform to the sexual-identity-based stereotypes Ludwig expected of Wolfe.

90. Ludwig made the Fifth Discriminatory Comment and Sixth Discriminatory Comment because of Wolfe's sexual orientation.

91. Ludwig made the Fifth Discriminatory Comment and Sixth Discriminatory Comment because of Wolfe's religion.

92. Throughout 2024, various coworkers of Wolfe referred to her as "The Gay Kid" ("Seventh Discriminatory Comment").

93. Wolfe's coworkers made the Seventh Discriminatory Comment because of Wolfe's sexual orientation.

94. The Discriminatory Comments were offensive to Wolfe.

95. The Discriminatory Comments were severe.

96. The Discriminatory Comments were pervasive.

97. Defendants did not intervene, investigate, or take remedial action against any employees in response to the Discriminatory Comments made against Wolfe.

98. On or about March 27, 2024, Hintz suspended Wolfe's employment.

99. On or about March 27, 2024, OHC suspended Wolfe's employment.

100. Wolfe's suspension was an adverse action.

101. Wolfe's suspension was an adverse employment action.

102. Wolfe's suspension was in response to Wolfe's Reports of Discrimination.

103. On or about April 4, 2024, Hintz terminated Wolfe's employment.

104. On or about April 4, 2024, OHC terminated Wolfe's employment.

105. Wolfe's termination was an adverse action.

106. Wolfe's termination was an adverse employment action.

107. Wolfe's termination was in response to Wolfe's Reports of Discrimination.

108. Defendants terminated Wolfe's employment because of her sexual identity.

109. Defendants terminated Wolfe's employment because she did not conform to sexual-identity-based stereotypes expected of her.

110. Defendants terminated Wolfe's employment because of her sexual orientation.

111. Defendants terminated Wolfe's employment in retaliation for her Reports of Discrimination.

112. Defendants knowingly terminated Wolfe's employment.

113. Defendants knowingly took an adverse employment action against Wolfe.

114. Defendants knowingly took an adverse action against Wolfe.

115. Defendants intentionally terminated Wolfe's employment.

116. Defendants intentionally took an adverse employment action against Wolfe.

117. Defendants intentionally took an adverse action against Wolfe.

118. Defendants knew that terminating Wolfe would cause Wolfe harm, including economic harm.

119. Defendants willfully terminated Wolfe's employment.

120. Defendants willfully took an adverse employment action against Wolfe.

121. Defendants willfully took an adverse action against Wolfe.

122. As a direct and proximate result of Defendants' conduct, Wolfe suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## COUNT I: SEXUAL IDENTITY DISCRIMINATION IN VIOLATION OF TITLE VII
### (as against Defendant OhioHealth Corporation)

123. Wolfe restates every prior paragraph of this Complaint, as if it were fully restated herein.

124. Wolfe is a member of a statutorily protected class based on her sexual identity under Title VII.

125. Wolfe is a member of a statutorily protected class based on her sexual orientation under Title VII.

126. OHC treated Wolfe differently than other similarly situated employees based on her sexual identity.

127. OHC treated Wolfe differently than other similarly situated employees based on her sexual orientation.

128. OHC discriminated against Wolfe on the basis of her sexual identity during her employment with the company.

129. OHC discriminated against Wolfe on the basis of her sexual orientation during her employment with the company.

130. OHC terminated Wolfe's employment without just cause.

131. OHC terminated Wolfe's employment based on her sexual identity.

132. OHC terminated Wolfe's employment based on her sexual orientation.

133. OHC's discrimination against Wolfe based on her sexual identity violates Title VII.

134. OHC's discrimination against Wolfe based on her sexual orientation violates Title VII.

135. As a direct and proximate result of OHC's conduct, Wolfe suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

### COUNT II: SEXUAL IDENTITY DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 et seq.
### (as against Defendant OhioHealth Corporation)

136. Wolfe restates each and every prior paragraph of this complaint, as if it were fully restated herein.

137. Wolfe is a member of a protected class based on her sexual orientation under R.C. §4112.02.

138. OHC treated Wolfe differently than other similarly situated employees based on her sexual identity.

139. OHC treated Wolfe differently than other similarly situated employees based on her sexual orientation.

140. OHC discriminated against Wolfe on the basis of her sexual identity throughout her employment with the company.

141. OHC discriminated against Wolfe on the basis of her sexual orientation throughout her employment with the company.

142. As a result of the sexual identity discrimination Wolfe suffered at OHC, Wolfe was terminated.

143. As a result of the sexual orientation discrimination Wolfe suffered at OHC, Wolfe was terminated.

144. OHC's discrimination against Wolfe based on her sexual identity violates R.C. § 4112.01 *et seq*.

145. OHC's discrimination against Wolfe based on her sexual orientation violates R.C. § 4112.01 *et seq.*

146. As a direct and proximate result of OHC's conduct, Wolfe suffered and will continue to suffer damages.

**COUNT III: HOSTILE WORK ENVIRONMENT ON THE BASIS OF SEXUAL IDENTITY DISCRIMINATION IN VIOLATION OF TITLE VII *et seq.***
**(as against Defendant OhioHealth Corporation)**

147. Wolfe restates each and every prior paragraph of this complaint, as if it were fully restated herein.

148. During her employment with OHC, Wolfe was subjected to offensive and harassing conduct by OHC based on her sexual identity.

149. During her employment with OHC, Wolfe was subjected to offensive and harassing conduct by OHC based on her sexual orientation.

150. OHC knew or should have known of the harassing conduct against Wolfe by Perkins.

151. OHC knew or should have known of the harassing conduct against Wolfe by Wasson.

152. OHC knew or should have known of the harassing conduct against Wolfe by Ludwig.

153. OHC knew or should have known of the harassing conduct against Wolfe by her coworkers.

154. OHC condoned, tolerated, and ratified this harassing conduct.

155. This harassing conduct was severe and/or pervasive.

156. This harassing conduct was offensive to Wolfe.

157. This harassing conduct interfered with Wolfe's ability to perform her job duties.

158. Perkins' offensive and harassing conduct created a hostile and/or abusive work environment for Wolfe.

159. Perkins' offensive and harassing conduct created a hostile and/or abusive work environment for the reasonable person similarly situated to Wolfe.

160. Wasson's offensive and harassing conduct created a hostile and/or abusive work environment for Wolfe.

161. Wasson's offensive and harassing conduct created a hostile and/or abusive work environment for the reasonable person similarly situated to Wolfe.

162. Ludwig's offensive and harassing conduct created a hostile and/or abusive work environment for Wolfe.

163. Ludwig's offensive and harassing conduct created a hostile and/or abusive work environment for the reasonable person similarly situated to Wolfe.

164. Wolfe's coworkers' offensive and harassing conduct created a hostile and/or abusive work environment for Wolfe.

165. Wolfe's coworkers' offensive and harassing conduct created a hostile and/or abusive work environment for the reasonable person similarly situated to Wolfe.

166. As a direct and proximate result of OHC's conduct, Wolfe suffered and will continue to suffer damages.

**COUNT IV: HOSTILE WORK ENVIORNEMNT ON THE BASIS OF SEXUAL IDENTITY DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.***
**(as against Defendant OhioHealth Corporation)**

167. Wolfe restates each and every prior paragraph of this complaint, as if it were fully restated herein.

168. During her employment with OHC, Wolfe was subjected to offensive and harassing conduct by OHC based on her sexual orientation.

169. OHC knew or should have known of the harassing conduct against Wolfe by Perkins.

170. OHC knew or should have known of the harassing conduct against Wolfe by Wasson.

171. OHC knew or should have known of the harassing conduct against Wolfe by Ludwig.

172. OHC knew or should have known of the harassing conduct against Wolfe by her coworkers.

173. OHC condoned, tolerated, and ratified this harassing conduct.

174. This harassing conduct was severe and/or pervasive.

175. This harassing conduct was offensive to Wolfe.

176. This harassing conduct interfered with Wolfe's ability to perform her job duties.

177. Perkins' offensive and harassing conduct created a hostile and/or abusive work environment for Wolfe.

178. Perkins' offensive and harassing conduct created a hostile and/or abusive work environment for the reasonable person similarly situated to Wolfe.

179. Wasson's offensive and harassing conduct created a hostile and/or abusive work environment for Wolfe.

180. Wasson's offensive and harassing conduct created a hostile and/or abusive work environment for the reasonable person similarly situated to Wolfe.

181. Ludwig's offensive and harassing conduct created a hostile and/or abusive work environment for Wolfe.

182. Ludwig's offensive and harassing conduct created a hostile and/or abusive work environment for the reasonable person similarly situated to Wolfe.

183. Wolfe's coworkers' offensive and harassing conduct created a hostile and/or abusive work environment for Wolfe.

184. Wolfe's coworkers' offensive and harassing conduct created a hostile and/or abusive work environment for the reasonable person similarly situated to Wolfe.

185. As a direct and proximate result of OHC's conduct, Wolfe suffered and will continue to suffer damages.

## COUNT V: RELIGIOUS DISCRIMINATION IN VIOLATION OF TITLE VII *et seq.*
### (as against Defendant OhioHealth Corporation)

186. Wolfe restates each and every prior paragraph of this complaint, as if it were fully restated herein.

187. Wolfe is Jewish.

188. Wolfe disclosed her Jewish faith to coworkers on several occasions.

189. Wolfe is a member of a statutorily protected class based on her faith under Title VII.

190. OHC treated Wolfe differently that other similarly situated employees based on her religion.

191. OHC discrimination against Wolfe on the basis of her religion throughout her employment with the company.

192. As a result of the religious discrimination Wolfe suffered at OHC, Wolfe was terminated.

193. OHC's discrimination against Wolfe based on her religion violates Title VII.

194. As a direct and proximate result of OHC's conduct, Wolfe suffered and will continue to suffer damages.

## COUNT VI: RELIGIOUS DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*
### (as against Defendant OhioHealth Corporation)

195. Wolfe restates each and every prior paragraph of this complaint, as if it were fully restated herein.

196. Wolfe is Jewish.

197. Wolfe disclosed her Jewish faith to coworkers on several occasions.

198. Wolfe is a member of a statutorily protected class based on her faith under R.C. § 4112.01 *et seq.*

199. OHC treated Wolfe differently that other similarly situated employees based on her religion.

200. OHC discrimination against Wolfe on the basis of her religion throughout her employment with the company.

201. As a result of the religious discrimination Wolfe suffered at OHC, Wolfe was terminated.

202. OHC's discrimination against Wolfe based on her religion violates R.C. § 4112.01 *et seq*.

203. As a direct and proximate result of OHC's conduct, Wolfe suffered and will continue to suffer damages.

## COUNT VII: RETALIATION IN VIOLATION OF TITLE VII
### (as against Defendant OhioHealth Corporation)

204. Wolfe restates each and every prior paragraph of this complaint, as if it were fully restated herein.

205. As a result of the discriminatory conduct described above, Wolfe participated in the Report of Discrimination.

206. Subsequent to Wolfe's Report of Discrimination, OHC suspended Wolfe's employment.

207. Subsequent to Wolfe's Report of Discrimination, OHC terminated Wolfe's employment.

208. OHC's actions were retaliatory in nature based on Wolfe's opposition to the unlawful conduct.

209. Pursuant to Title VII, it is an unlawful discriminatory practice to retaliate against an employee for opposing a discriminatory practice.

210. As a direct and proximate result of OHC's conduct, Wolfe suffered and will continue to suffer damages.

## COUNT VIII: RETALIATION IN VIOLATION OF R.C. § 4112.01 *et seq.*
### (as against all Defendants)

211. Wolfe restates each and every prior paragraph of this complaint, as if it were fully restated herein.

212. As a result of the discriminatory conduct described above, Wolfe complained about the discrimination and harassment she was experiencing.

213. Subsequent to Wolfe's Report of Discrimination, Defendants retaliated against Wolfe by suspending her.

214. Subsequent to Wolfe's Report of Discrimination, Defendants retaliated against Wolfe by terminating her.

215. Defendants' actions were retaliatory in nature based on Wolfe's opposition to the unlawful discriminatory conduct.

216. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

217. As a direct and proximate result of Defendants' conduct, Wolfe suffered and will continue to suffer damages.

**COUNT IX: UNLAWFUL AIDING, ABETTING, AND INCITING OF DISCRIMINATION**
**(as against Defendant Keisha Hintz)**

218. Wolfe restates each and every prior paragraph of this complaint, as if it were fully restated herein.

219. Pursuant to R.C. § 4112.02 (J), it is unlawful "[f]or any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice…"

220. Hintz aided, abetted, incited, coerced, and/or compelled OHC's suspension of Wolfe.

221. Hintz aided, abetted, incited, coerced, and/or compelled OHC's discriminatory treatment of Wolfe.

222. Hintz violated R.C. § 4112.02(J) and § 4112.99 by aiding, abetting, and inciting discrimination.

223. As a direct and proximate result of OHC's conduct, Wolfe has suffered and will continue to suffer damages.

### **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff Jacob Wolfe respectfully requests that this Honorable Court grant the following relief:

(a) Issue a permanent injunction:

(i) Requiring OHC to abolish discrimination, harassment, and retaliation;

(ii) Requiring allocation of significant funding and trained staff to implement all changes within two years;

(iii) Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to investigate complaints promptly and/or take effective action to stop and deter prohibited personnel practices against employees;

(iv) Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

(v) Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) An award against each Defendant of compensatory and monetary damages to compensate Wolfe for lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Wolfe claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ Trisha Breedlove
Trisha Breedlove (0095852)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
*1103 Schrock Road, Suite 307*
*Columbus, Ohio 43229*
Phone: (614) 556-4811
Fax:    (216) 291-5744
Email: trisha.breedlove@spitzlawfirm.com
          milan.gligorevic@spitzlawfirm.com

*Attorney for Plaintiff Jacob Wolfe*

## JURY DEMAND

Plaintiff Jacob Wolfe demands a trial by jury by the maximum number of jurors permitted.

/s/ Trisha Breedlove
Trisha Breedlove (0095852)

*Attorney for Plaintiff Jacob Wolfe*